Joanna A. Diakos (JD-7269)
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
Telephone: 212.536.3900
Facsimile: 212.536.3901

Susan E. Hollander (*pro hac vice* to be submitted)
Jocelyn M. Belloni (*pro hac vice* to be submitted)
Sharoni S. Finkelstein (*pro hac vice* to be submitted)
4 Embarcadero Center, Suite 1200
San Francisco, California 94111
Telephone: 415.882.8200
Facsimile: 415.882.8220

Attorneys for Plaintiff GMYL, L.P.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                           :
GMYL, L.P., a California limited partnership,              :
                                                           :
                                  Plaintiff,               :
                                                           :
                -against-                                  :   Civil Action No.  15-CV-7023
                                                           :
                                                           :
CINEMA WINES, S.L., a Spanish company;                     :   **JURY DEMAND**
and TRI-VIN IMPORTS, INC., a New York                      :
corporation,                                               :
                                                           :
                                  Defendants.              :
                                                           :
-----------------------------------------------------------x

## COMPLAINT

Plaintiff GMYL, L.P. ("**Plaintiff**"), by its attorneys K&L Gates LLP, for its

Complaint against Defendants Cinema Wines, S.L. ("**Cinema Wines**") and Tri-Vin Imports,

Inc. ("**Tri-Vin**") (collectively, "**Defendants**"), alleges as follows:

## NATURE OF THE ACTION

1.      This is an action seeking damages and injunctive relief for Defendants'

continuing infringement of Plaintiff's federally registered CINEMA trademark and Wrap

Around Label.  Plaintiff has used its CINEMA trademark in connection with wine since at

least as early as 2008, and has used its distinctive Wrap Around Label in connection with

wine since at least as early as 2006.[1]  Plaintiff owns federal trademark registrations for both

its CINEMA trademark and Wrap Around Label (U.S. Registration Nos. 3,644,735 and

3,405,575, respectively).  Recently, and with actual notice of Plaintiff's prior rights,

Defendants began selling wine in the United States under the identical CINEMA trademark,

and under a highly similar wrap around label designed to mimic a film strip.  Below is a

comparison of (a) Plaintiff's wine bearing the CINEMA trademark and Wrap Around Label

and (b) Defendants' wine bearing the CINEMA trademark and confusingly similar wrap

around label (collectively, the "**Infringing Wine**"):

| Plaintiff's CINEMA Wine with wrap around label | Defendants' CINEMA Wine with wrap around label |
|---|---|
|  |  |

2.      This action arises under the Trademark Act of 1946, as amended, 15 U.S.C.

§§ 1051 *et seq.*, for:  (a) infringement of federally registered trademarks in violation of

---

[1] For purposes of this Complaint, all references to Plaintiff's use of CINEMA and/or the
Wrap Around Label shall refer to use of CINEMA and/or the Wrap Around Label by Plaintiff
and its predecessors in interest, affiliates, and/or licensees.

Section 32 of the Trademark Act, as amended 15 U.S.C. § 1114; (b) unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (c) related claims of unfair competition and trademark infringement in violation of Plaintiff's common law rights; and (d) deceptive trade practices under New York General Business Law § 349.

## THE PARTIES

3.      Plaintiff is a limited partnership organized and existing under the laws of the State of California.

4.      Upon information and belief, Defendant Cinema Wines, S.L. ("**Cinema Wines**") is a company registered in Spain, with a registered office located at Calle Felipe Gómez, 1, E-47140 Laguna de Duero (Valladolid), Spain.  Upon information and belief, Cinema Wines is a wine producer that produces the Infringing Wine and exports it to the United States.

5.      Upon information and belief, Defendant Tri-Vin Imports, Inc. ("**Tri-Vin**") is a New York corporation, with a reported principal place of business located at 1 Park Avenue, Mount Vernon, New York 10550-2203.  The Chief Executive Officer of Tri-Vin is Joao A. Oliveira.  Upon information and belief, Tri-Vin is a national wine importer and distributor and imports and distributes Cinema Wines' Infringing Wine in the United States.

6.      Cinema Wines and Tri-Vin are referred to collectively as "**Defendants**."

## JURISDICTION AND VENUE

7.      This action is within the jurisdiction of the Court by virtue of 15 U.S.C. § 1121 and 28 U.S.C. § 1331, in that Counts I and II arise under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.  This Court also has jurisdiction under 28 U.S.C. § 1332 (diversity) because (a) there is complete diversity of citizenship between the Plaintiff and Defendants, and (b) the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.     This Court has supplemental jurisdiction over Plaintiff's claims arising out of Defendants' unfair competition violations pursuant to 28 U.S.C. § 1338 and over Defendants' violations of common law and New York statutory law pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Plaintiff's Lanham Act claims that they form part of the same case or controversy under Article III of the United States Constitution.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims in this action occurred in this District.

10.     This Court has personal jurisdiction over Tri-Vin because, upon information and belief, Tri-Vin resides in this District.

11.     This Court has personal jurisdiction over Cinema Wines because, upon information and belief, Cinema Wines exports the Infringing Wine to this District.  Cinema Wines' contacts in the United States and with this District are systematic and continuous.  In August 2014 and June 2015, in preparation of selling Cinema Wines' Infringing Wine, Tri-Vin obtained Certificates of Label Approval from the U.S. Department of Treasury Alcohol and Tobacco Tax and Trade Bureau for the labels of the Infringing Wine.  Since then, upon information and belief, Cinema Wines has exported, and continues to export, the Infringing Wine to the United States, and has offered and sold, and continues to offer and sell, the Infringing Wine in this District.  Upon information and belief, Cinema Wines' Infringing Wine is offered for sale to United States consumers through, among other things, wine merchants including (a) WineDeals.com, owned and operated by Premier Wine & Spirits, located at 3900 Maple Road, Amherst, New York 14226, (b) WineWorks, located at 319 Route 70, Marlton, New Jersey 08053, and (c) Westchester Wine Warehouse LLC, located at 53 Tarrytown Road, White Plaints, New York 10607.  Attached at Exhibit A are screenshots of websites at and through which WineDeals.com, WineWorks, and Westchester Wine

Warehouse offer the Infringing Wine.  As shown at Exhibit A, WineDeals.com and Westchester offer the Infringing Wine for sale directly alongside Plaintiff's CINEMA wine. Upon information and belief, consumers in the United States and in this District have in fact purchased Cinema Wines' wines sold under the infringing trademark and trade dress complained of herein.

12.    This Court has personal jurisdiction over Defendants because they have directed tortious acts at Plaintiff in this District, and have committed tortious acts that they knew or should have known would cause injury to Plaintiff in this District.

**FACTS COMMON TO ALL CAUSES OF ACTION**

**Plaintiff's CINEMA and Wrap Around Label Trademarks**

13.    Francis Ford Coppola, the famous director and filmmaker, created and developed the flagship CINEMA brand as part of the Francis Ford Coppola Winery *Director's Cut* wine series, which is a special limited production series of wines that reflects the winemaker's vision of quintessential Sonoma wines.  Plaintiff's CINEMA wine consists of a proprietary blend of Zinfandel, Cabernet Sauvignon, Cab Franc, and Petite Sirah from specific Sonoma County appellations.  Since at least as early as November 2008, Plaintiff has continuously and pervasively used its distinctive CINEMA mark as a brand name for wine. In recognition of the distinctiveness of the CINEMA mark, on June 23, 2009, the USPTO issued to Plaintiff U.S. Registration No. 3,644,735.  A true and correct copy of this registration is attached hereto as Exhibit B.

14.    Paying homage to the history of filmmaking, Mr. Coppola came up with the idea for a striking and unusual label for the *Director's Cut* wine series and CINEMA brand, which looks like a film strip wrapped diagonally around the wine bottle twice (hereinafter, the "**Wrap Around Label**").  True and correct photographs of Plaintiff's products bearing the Wrap Around Label are attached hereto as Exhibit C.  Since at least as early as December

2006, Plaintiff has continuously and pervasively used its Wrap Around Label in connection

with wine.  In recognition of the distinctiveness of the Wrap Around Label, on April 1, 2008,

the USPTO issued to Plaintiff U.S. Registration No. 3,405,575:



A true and correct copy of this registration is attached hereto as <u>Exhibit D</u>.  A true and correct

photograph of Plaintiff's CINEMA wine bearing the Wrap Around Label is attached hereto

as <u>Exhibit E</u>.

       15.     The registrations set forth in <u>Exhibits B</u> and <u>D</u> are valid, subsisting, unrevoked

and uncancelled, and both are incontestable pursuant to 15 U.S.C. § 1065.

       16.     The strength and distinctiveness of the CINEMA mark and Wrap Around

Label are buttressed by their widespread secondary meaning in the marketplace.  Plaintiff has

marketed, promoted, advertised, and sold its CINEMA-branded wines featuring the

distinctive Wrap Around Label in and through a variety of venues, including at wineries, in

grocery stores, through brick-and-mortar and online wine merchants, and on its popular

website located at *www.francisfordcoppolawinery.com*.  To date, Plaintiff's *Director's Cut*

wine series and CINEMA wines featuring the Wrap Around Label have achieved tens of

millions of dollars in revenue.

       17.     Plaintiff has invested significant time and resources in promoting its high

quality CINEMA wines and distinctive Wrap Around Label, and these wines have received

substantial accolades and awards.  Described as "very cool" by the *Wall Street Journal*

SpeakEasy blog, Plaintiff's CINEMA-branded wine featuring the distinctive Wrap Around Label has also been the subject of substantial promotion and unsolicited media attention in *The Washington Post*, *Wine Spectator Magazine*, *Town & Country Magazine*, *San Francisco Chronicle*, *Los Angeles Magazine*, *Examiner.com*, *National Wine Review*, and on ABC News.

18.     As a result of the promotional efforts and media attention outlined above, Plaintiff and its CINEMA mark and Wrap Around Label enjoy extensive goodwill and consumer recognition.  In sum, Plaintiff's CINEMA mark and Wrap Around Label are inherently distinctive, have become known by the public as designating the highest level of quality, and have acquired secondary meaning in that they are associated in the minds of the public with Plaintiff and its quality products and services.

**DEFENDANTS' UNLAWFUL CONDUCT**

19.     Upon information and belief, in or around 2010, and well after Plaintiff's first use of the CINEMA mark and Wrap Around Label in the United States, Cinema Wines began using the word mark CINEMA together with a "film strip" trade dress on and in connection with wine sold in Spain (the "**Infringing CINEMA Mark**").  A true and correct copy of Cinema Wines' label as of 2011 is attached hereto as Exhibit F.

20.     Upon learning of Cinema Wines' use of the Infringing CINEMA Mark and "film strip" trade dress in Spain, on or about October 25, 2011, counsel for Plaintiff sent a cease and desist letter to Cinema Wines putting it on actual notice of Plaintiff's prior United States rights in its federally registered CINEMA trademark, and demanding that Cinema Wines (a) not sell wine in the United States under the Infringing CINEMA Mark, and (b) refrain from filing any trademark applications for CINEMA in the United States.

21.     On or about October 28, 2011, Cinema Wines wrote to counsel for Plaintiff stating that it did not, at the time, export wines bearing the Infringing CINEMA Mark to the United States, and stating that it would like to "collaborate" with Plaintiff in importing

Cinema Wines' products bearing the Infringing CINEMA Mark into the United States in the future.  When Plaintiff did not accept this offer, Cinema Wines threatened to sue Plaintiff for trademark infringement in Europe.

22.     Upon information and belief, in or around 2014, despite Plaintiff's objection and with actual notice of Plaintiff's prior and senior rights in the CINEMA mark, Defendants filed with the U.S. Department of Treasury's Alcohol and Tobacco Tax and Trade Bureau an application for a Certificate of Label Approval ("**COLA**")[2] indicating their intention to sell wine in the United States under the Infringing CINEMA Mark and a new wrap around label that resembles a film strip.

23.     On or about August 5, 2014, Tri-Vin obtained a COLA for Cinema Wines' new CINEMA and wrap around wine label, as follows:



24.     As shown above, Cinema Wines' proposed 2014 label prominently displays the Infringing CINEMA Mark and a wrap around "film strip" label.  Cinema Wines' proposed label consists of two rectangular "film strips" that wrap around the bottle—the upper rectangular "film strip" wraps around the bottle horizontally, while the lower rectangular "film strip" wraps around the bottle diagonally.  A true and correct photograph of Cinema Wines' bottle bearing the above label is attached hereto as Exhibit G.

---

[2] A COLA authorizes the certificate holder to bottle and remove or import alcoholic beverages that bear labels identical to those shown on the COLA, and is required before a wine can be sold in United States commerce.

25.     Upon learning that Cinema Wines obtained the COLA in anticipation of selling the Infringing Wine in the United States, on or about November 7, 2014, counsel for Plaintiff sent a further cease and desist letter to Cinema Wines and its United States distributor, Tri-Vin, setting forth Plaintiff's rights in the CINEMA mark and Wrap Around Label, and demanding that Defendants (a) surrender the COLA, and (b) refrain from commencing sales of wine bearing the Infringing CINEMA Mark and/or the wrap around label in the United States.

26.     Despite Plaintiff's objection, and with actual notice of Plaintiff's prior and senior rights in the CINEMA trademark and Wrap Around Label, Defendants did not surrender the COLA and began selling the Infringing Wine in the United States.

27.     On or about June 3, 2015, Tri-Vin obtained a second COLA for Cinema Wines' new CINEMA wine label, as follows:



28.     As shown above, Cinema Wines' proposed 2015 label prominently displays the Infringing CINEMA Mark and a wrap around "film strip" label.  The label consists of three rectangular "film strips" that wrap around the bottle—the upper rectangular "film strip" wraps around the bottle horizontally, while the lower two rectangular "film strips" wrap

around the bottle diagonally.  A true and correct photograph of Cinema Wines' bottle bearing the above label is attached hereto as Exhibit H.

29.    Cinema Wines' bottle labels described in Paragraphs 23–24 and 27–28 herein are collectively referred to as the "**Infringing CINEMA Wrap Around Labels**."

30.    In sum, after receiving actual notice of Plaintiff's trademark rights in the CINEMA mark and Wrap Around Label, Cinema Wines substantially changed the look of its wine bottles bearing the Infringing CINEMA Mark to more closely resemble Plaintiff's federally registered Wrap Around Label by changing its original single film strip label to a label featuring several "film strips" which appear to wrap diagonally around the bottle, just as Plaintiff's federally registered Wrap Around Label does.  Below is a side-by-side comparison of Cinema Wines' labels and Plaintiff's Wrap Around Label:

| Plaintiff's CINEMA Wine 2015 Label | Cinema Wines' CINEMA Wine 2011 Label | Cinema Wines' CINEMA Wine 2014 Label | Cinema Wines' CINEMA Wine 2015 Label |
|---|---|---|---|
|  |  |  |  |
| | *Not sold in the U.S.* | *Sold in the U.S.* | *Sold in the U.S.* |

31.    Upon information and belief, Defendants recently imported the Infringing Wine into the United States.  Specifically, Defendants imported 200 cases via the Port of New York on November 7, 2014 and 300 cases via the Port of New York on July 17, 2015.

32.    The Infringing CINEMA Mark is identical to Plaintiff's federally registered CINEMA mark.

33.    The Infringing CINEMA Wrap Around Labels are highly similar in appearance and overall impression to Plaintiff's Wrap Around Label.  Like Plaintiff's Wrap Around Label, the Infringing CINEMA Wrap Around Labels depict a narrow film strip wrapped diagonally around a wine bottle.

34.    Plaintiff's and Defendants' respective CINEMA marks and wrap around labels are used in connection with identical products, and are sold through identical channels of trade.  For example, the Infringing Wine is sold directly next to Plaintiff's CINEMA wine on the WineDeals.com and Westchester distributor websites shown at Exhibit A.

35.    Defendants began selling the Infringing Wine in commerce in the United States long after Plaintiff first used its well-known and distinctive CINEMA mark and Wrap Around Label in commerce in the United States.  As set forth in Paragraphs 13–14 above, Plaintiff has continuously used the CINEMA mark in connection with wine since at least as early as 2008, and has continuously used the Wrap Around Label in connection with wine since at least as early as 2006, and thus is the prior and senior user of the marks.

36.    Defendants' Infringing CINEMA Wrap Around Labels are confusingly similar to Plaintiff's CINEMA mark and Wrap Around Label.  Consumers are likely to be confused, mistaken, or deceived as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' products by Plaintiff, in violation of 15 U.S.C. § 1125(a).  Defendants' conduct is also likely to induce consumers to

believe, contrary to fact, that their wines bearing the Infringing CINEMA Wrap Around Labels are sponsored, endorsed, approved by, or connected with Plaintiff. *Id.*

37.     Plaintiff's federal registration of the CINEMA mark and Wrap Around Label, as set forth in Paragraphs 13–14 above, as well as Plaintiff's written correspondence set forth in Paragraphs 20 and 25 above, provided actual and constructive notice to the Defendants of Plaintiff's rights in the CINEMA mark and Wrap Around Label, such that Defendants' subsequent adoption and use of the Infringing CINEMA Wrap Around Labels in the United States constitutes willful infringement of Plaintiff's rights pursuant to 15 U.S.C. § 1117(a). Defendants have, in effect, admitted likelihood of confusion by threatening to bring a trademark infringement action in Europe against Plaintiff based on Plaintiff's use of CINEMA.

## **COUNT I**

### **(Infringement of Federally Registered Trademarks Under 15 U.S.C. §§ 1051 *et seq.*)**

38.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 37 above as if fully set forth herein.

39.     Defendants' aforesaid acts constitute use in commerce of colorable imitations of Plaintiff's federally registered CINEMA trademark and Wrap Around Label in connection with the sale of Defendants' Infringing Wine, which is likely to cause confusion, in violation of the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051 *et seq.*, and more particularly, of § 1114(1).

40.     Defendants' aforesaid acts have caused and will continue to cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiff will continue to suffer great and irreparable injury.

41.     Plaintiff has no adequate remedy at law.

## COUNT II

### (False Designation of Origin and Unfair Competition Under § 43(a) of the Lanham Act)

42.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 41 above as if fully set forth herein.

43.     Upon information and belief, Defendants' conduct alleged herein is likely to cause confusion, to cause mistake, or to deceive consumers as to the origin, source, or sponsorship of Defendants' goods and is likely to create the false impression that the wine imported and sold by Defendants is somehow authorized, sponsored, endorsed, licensed by or affiliated with Plaintiff.

44.     Defendants have, in effect, admitted likelihood of confusion by threatening to bring a trademark infringement action in Europe against Plaintiff based on Plaintiff's use of CINEMA.

45.     Defendants' unlawful conduct and acts, as alleged herein, constitute willful and intentional unfair competition, false designation of origin, and use of a false description in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46.     Defendants' aforesaid acts have caused and will continue to cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiff will continue to suffer great and irreparable injury.

47.     Plaintiff has no adequate remedy at law.

## COUNT III

### (Trademark Infringement under New York Common Law)

48.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 47 as if fully set forth herein.

49.     Defendants' aforesaid acts constitute infringement, imitation and misappropriation of Plaintiff's CINEMA trademark and Wrap Around Label in violation of Plaintiff's rights under the common law of the State of New York.

50.     Defendants' aforesaid acts have caused and will continue to cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiff will continue to suffer great and irreparable injury.

51.     Plaintiff has no adequate remedy at law.

## COUNT IV

### (Unfair Competition under New York Common Law)

52.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 51 as if fully set forth herein.

53.     Defendants' wrongful use of the Infringing CINEMA Wrap Around Labels is likely to deceive the public into believing falsely that the Infringing Wine imported and sold by Defendants is sponsored, affiliated or approved by Plaintiff.

54.     Defendants' aforesaid acts constitute intentional and willful unfair competition under the common law of the State of New York.

55.     Defendants' aforesaid acts have caused and will continue to cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiff will continue to suffer great and irreparable injury.

56.     Plaintiff has no adequate remedy at law against this unfair competition, such that monetary damages alone cannot fully compensate it for injuries caused by Defendants' misconduct.  Such misconduct will continue to cause irreparable harm to Plaintiff unless enjoined by the Court.

## COUNT V

### (Deceptive Trade Practices)

57.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 56 above as if fully set forth herein.

58.     Defendants are selling, offering for sale and/or distributing unauthorized products bearing the Infringing CINEMA Wrap Around Labels.

59.     The acts of Defendants complained of herein constitute deceptive trade practices in violation of New York General Business Law § 349 and cause harm to the public.

60.     As a result of such alleged acts, Plaintiff has suffered and will continue to suffer great damage to its business, goodwill and profits.

61.     Plaintiff has no adequate remedy at law against these deceptive acts and practices, such that monetary damages alone cannot fully compensate for the resulting injuries.

62.     Defendants' wrongdoing as set forth above will continue to cause irreparable harm to Plaintiff unless enjoined by this Court.


**WHEREFORE**, Plaintiff GMYL, L.P. prays for judgment against Defendants as follows:

1.     Directing that Defendants and their suppliers, officers, agents, servants, employees and attorneys and those persons in active concert, privity or participation with them, or any of them, or any of their successors or assigns, be preliminarily and permanently enjoined and restrained from:

(a)     importing into the United States, distributing in the United States, selling in the United States or otherwise using the Infringing CINEMA Wrap Around Labels, or any

colorable imitation of Plaintiff's CINEMA trademark and Wrap Around Label, in the United States in connection with wine or related goods;

(b)     committing any acts calculated to cause the public to believe that Defendants' products are those sold under the control and supervision of Plaintiff or sponsored or approved by Plaintiff;

(c)     otherwise unfairly competing with Plaintiff in the sale, offering for sale or distribution of wine under the CINEMA trademark and/or Wrap Around Label;

(d)     shipping, delivering, distributing, returning or otherwise disposing of in the marketplace, in any manner, wines bearing the Infringing CINEMA Wrap Around Labels;

(e)     using in connection with the sale of any goods, a false description or representation including words or symbols tending to falsely describe or represent such products as being Plaintiff's products and from offering such goods in commerce without the consent and approval of Plaintiff;

(f)     destroying any records documenting the manufacture, distribution, sale or receipt of wines bearing the Infringing CINEMA Wrap Around Labels; and

(g)     assisting, aiding or abetting any other person or business entity to engage in or perform any of the activities referenced in subparagraphs (a) through (f) above.

2.     Directing that Defendants and those controlled by Defendants and those acting for Defendants be required to recall from all of their customers in the trade and deliver up to the Court for destruction all unauthorized products, labels, packages, etc., which bear the Infringing CINEMA Wrap Around Labels, or which bear any other device, representation or indicia in violation of the injunction requested by Plaintiff herein;

3.     Requiring Defendants within three (3) days after the entry of service of an injunction, whether preliminary or permanent, be ordered to provide Plaintiff with a complete list of individuals or entities (including names, addresses and other contact information) to

whom it has distributed and/or sold all products bearing the Infringing CINEMA Wrap Around Labels.

      4.     Requiring Defendants to file with the Court and serve upon Plaintiff within thirty (30) days after service upon the Defendant(s) of this Court's injunction in this action a written report by the Defendants under oath setting forth in detail the manner in which the Defendants have complied with such injunction;

      5.     Adjudging that Defendants are liable to Plaintiff for deceptive and unfair business practices under N.Y. Gen. Bus. Law § 349;

      6.     Directing such other relief as the Court may deem appropriate to prevent consumers from deriving the erroneous impression that Defendants are associated or connected with Plaintiff or that any goods offered for sale by Defendants are authorized by Plaintiff or are related in any way to Plaintiff;

      7.     Requiring Defendants to account for and pay to Plaintiff their profits attributable to the conduct alleged herein and awarding Plaintiff its actual damages arising out of Defendants' acts of unfair competition under § 43(a) of the Lanham Act and three times such profits or damages (whichever is greater) pursuant to § 35(a) of the Lanham Act arising out of Defendants' willful conduct;

      8.     Awarding Plaintiff statutory damages as the Court considers just as a result of Defendants' intentional and willful conduct pursuant to 15 U.S.C. § 1117;

      9.     Awarding Plaintiff its full costs in this action, including attorneys' fees, as a result of Defendants' willful conduct;

      10.     Awarding Plaintiff its actual damages arising out of Defendants' deceptive and unfair trade practices, or, at the Court's discretion, statutory damages not to exceed three times Plaintiff's actual damages, up to $1,000, arising out of Defendants' willful conduct, and Plaintiff's attorneys' fees under N.Y. Gen. Bus. L. § 349;

11.     Awarding Plaintiff its actual damages arising out of Defendants' acts of willful unfair competition under New York state common law;

12.     Awarding Plaintiff punitive damages under New York state common laws on account of Defendants' gross, wanton and willful conduct;

13.     Awarding Plaintiff its interest, including pre-judgment interest, on the foregoing sums pursuant to applicable law; and

14.     Granting such other relief as the Court deems just and proper.

[*continued on next page*]

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues triable of right by jury.

Dated:   New York, New York                    Respectfully submitted,
          September 4, 2015

                                        By:  /s/ Joanna A. Diakos
                                             Joanna A. Diakos (JD-7269)
                                                joanna.diakos@klgates.com
                                             K&L GATES LLP
                                             599 Lexington Avenue
                                             New York, New York 10022
                                             Telephone: 212.536.3900
                                             Facsimile: 212.536.3901

                                             Susan E. Hollander (*pro hac vice* to be submitted)
                                                susan.hollander@klgates.com
                                             Jocelyn M. Belloni (*pro hac vice* to be submitted)
                                                jocelyn.belloni@klgates.com
                                             Sharoni S. Finkelstein (*pro hac vice* to be submitted)
                                                sharoni.finkelstein@klgates.com
                                             K&L GATES LLP
                                             4 Embarcadero Center, Suite 1200
                                             San Francisco, California 94111
                                             Telephone: 415.882.8200
                                             Facsimile: 415.882.8220

                                             *Attorneys for Plaintiff GMYL, L.P.*